**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JARDY RAFAEL REYES GUZMAN, | : | Civil No. 1:26-CV-00743 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| FIELD OFFICE DIRECTOR U.S. | : | |
| IMMIGRATION AND CUSTOMS | : | |
| ENFORCEMENT, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion to expedite resolution of the petition filed by Petitioner Jardy Rafael Reyes Guzman ("Reyes Guzman").  (Docs. 1, 9.)  Reyes Guzman argues that he is being unlawfully detained in violation of the Due Process Clause of the Fifth Amendment.  For the reasons that follow, the court will grant Reyes Guzman's petition, deny as moot his motion to expedite, and order his immediate release.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Reyes Guzman is a native and citizen of the Dominican Republic.  (Doc. 5-2, p. 2.)[1]  He entered the United States on December 13, 2010, as a legal permanent resident.  (*Id.* at 3.)  On January 30, 2018, Reyes Guzman was convicted of

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

1

conspiracy to distribute and possess with intent to distribute heroin in the United States District Court of New Jersey and sentenced to twenty months incarceration and three years of supervised release.  (Doc. 5-4.)

On July 12, 2019, Reyes Guzman sought admission to the United States at Newark Liberty International Airport.  (Doc. 5-2, p. 3.)  At that time, United States Customs and Border Protection served Reyes Guzman with a notice to appear charging him as removable pursuant to the Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(II) due to his federal criminal conviction.  (*Id.*; Doc. 5-3.)  Reyes Guzman was paroled into the United States until July 13, 2019.  (Doc. 5-2, p. 3.)  On August 2, 2021, Reyes Guzman was served with an order of release on recognizance.  (*Id.*)  According to Immigration and Customs Enforcement ("ICE"), Reyes Guzman failed to report to ICE on one occasion as required by his conditions of release.  (*Id.*)  Reyes Guzman submits that he did report as required on September 13, 2021, but was provided a notice to report information via email to ICE and expect a new reporting date.  (Doc. 1-5.)

On September 4, 2025, ICE arrested Reyes Guzman when he reported to an immigration check-in.  (Doc. 5-2, p. 3.)  He was transported to Federal Correctional Institution ("FCI") Lewisburg, where he remains detained.  (Doc. 1, p. 3.)  On March 25, 2026, an immigration judge ordered that Reyes Guzman be

removed from the United States, which Reyes Guzman appealed.  (Doc. 11, p. 1.)

His appeal is still pending before the Board of Immigration Appeals.  (*Id.*)

On March 23, 2026, Reyes Guzman filed a petition for writ of habeas corpus

requesting release from detention against multiple parties, including the Warden of

FCI Lewisburg (collectively, "Respondents").[2]  (Doc. 1.)  Respondents filed a

response on April 8, 2026, and no traverse was filed.  (Doc. 5.)  On July 10, 2026,

after a substitution of counsel, Reyes Guzman filed a motion to expedite the

disposition of this case.  (Doc. 9.)  On July 13, 2026, Respondents filed a response

pursuant to the court's order, and Reyes Guzman filed a reply on July 14, 2026.

(Docs. 10, 11, 12.)  Thus, both the petition and motion to expedite are ripe for

review.

### STANDARD OF REVIEW AND JURISDICTION

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of

habeas corpus when an immigration detainee is "in custody in violation of the

Constitution or laws or treaties of the United States."  Claims related to an

immigration detainee's request for release from confinement must be brought as a

---

[2] Respondents submit that the only proper respondent is Jessica Sage, the Warden of FCI Lewisburg.  (Doc. 5, p. 8.)  In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent.  *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.")  Because Petitioner has named a proper respondent, the court does not deem it necessary to determine whether the other named Respondents should be dismissed.

habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement."  *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted).  Reyes Guzman has been detained at FCI Lewisburg since September 2025, *see* Doc. 5, p. 3, which is within the Middle District of Pennsylvania.  *See* 28 U.S.C. § 118(b).

**DISCUSSION**

Reyes Guzman argues that his detention violates the Due Process Clause of the Fifth Amendment because it is based on inaccurate facts regarding his compliance with ICE reporting requirements.  (Doc. 1, p. 4.)  He also argues that he has been detained for an extended period of time without meaningful review of his custody status.  (*Id.* at 4–5.)  In support of his arguments, Reyes Guzman submits that he has strong family ties in the United States and his youngest daughter has serious medical issues requiring surgery and treatment.  (*Id.* at 3–4.)  He requests that the court immediately release him from custody or order a bond hearing before an immigration judge.  (*Id.* at 5.)

Respondents argue that Reyes Guzman is properly detained during his removal proceedings pursuant to 8 U.S.C. § 1225(b)(2)(A) because he is an arriving alien and arriving aliens are not entitled to bond hearings.  (Doc. 5, pp. 9–

4

18.)  Reyes Guzman arrived at a port of entry, was not admissible to the United

States, yet was paroled into the United States pursuant to 8 U.S.C.

§ 1182(d)(5)(A), and that parole expired.  (*Id.* at 10.)  Thus, Respondents submit

that his detention during removal proceedings is required under Section

1225(b)(2)(A).  (*Id.*)

Further, Respondents assert that Reyes Guzman is only entitled to the due

process required by statute to an arriving alien, which permitted his parole but his

parole expired.  (*Id.* at 13–18.)  However, if the court would find that Reyes

Guzman is detained under 8 U.S.C. § 1226(a) instead of Section 1225(b)(2)(A),

then the court should order a bond hearing before an immigration judge.  (*Id.* at

18–21.)

At the outset, the court notes that both sides failed to adequately address the

issue before the court in their briefing.  Nevertheless, this court is not the first to

weigh-in on whether an "arriving alien," who has been previously paroled under 8

U.S.C. § 1182(d)(5)(A), is subject to mandatory detention under Section 1225(b).

In *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 292–312 (E.D.N.Y.

2025), the Eastern District of New York addressed this exact question and held that

the petitioner was not an arriving alien subject to mandatory detention under

Section 1225(b)(1)(A)(i), nor could the petitioner be considered an applicant for

admission under Section 1225(b)(2).  Although *Rodriguez-Acurio* is not binding on

5

this court, the court finds that its analysis is thorough and well-reasoned and is persuaded by it.  Thus, as detailed *infra*, the court adopts *Rodriguez-Acurio*'s analysis and conclusions.

### A. Statutory framework

Several statutes are key to understanding this issue, first of which is the arriving alien provision.  Section 1225(b)(1) provides a path for expedited removal proceedings, which shortens the removal process for noncitizens who satisfy certain criteria:

> First, those noncitizens are "inadmissible" to the United States either because they lack proper entry documents or because they are engaged in fraud or willfully misrepresented a material fact on their application for admission.  Second, those noncitizens fall into at least one of two provisions of the expedited removal statute: (1) they "[are] arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i), and thereby fall into what is known as the "Arriving Aliens Provision."[3]

*Rodriguez-Acurio*, 811 F. Supp. 3d at 291 (internal citations omitted).

Two detention statutes are also implicated here.  Section 1226 applies to the detention of noncitizens "*already in the country* pending the outcome of removal proceedings."  *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)). Section 1226(a) provides, in relevant part:

> *On a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed

---

[3] The second provision is titled the "Designation Provision" and is inapplicable in this case. Thus, the court need not address it here.  *Rodriguez-Acurio*, 811 F. Supp. 3d at 291.

from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—

>    (1) may continue to detain the arrested alien; and
>    (2) may release the alien on—
>        (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>        (b) conditional parole.

8 U.S.C. § 1226(a) (emphasis added).[4]  Section 1225(b) details mandatory detention procedures for two groups of "applicants for admission" to the United States.  Section 1225(b)(1) requires mandatory detention for noncitizens subject to expedited removal, which includes those who fall within the Arriving Alien Provision.  *See Rodriguez-Acurio*, 811 F. Supp. 3d at 293.  Section 1225(b)(2) requires detention for any applicant for admission "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ."  8 U.S.C. § 1225(b)(2)(A).  Except for temporary parole under Section 1182(d)(5)(A), "there are no other circumstances under which aliens detained under Section 1225(b) may be released."  *Rodriguez-Acurio*, 811 F. Supp. 3d at 294 (quoting *Jennings*, 583 U.S. at 300).

Finally, pursuant to Section 1182(d)(5)(A), a noncitizen detained under Section 1225(b)(1) or (b)(2) "may be temporarily released on parole 'for urgent

---

[4] There is no indication from the briefing or records before the court that the Government believes that Section 1226(c) is applicable in this case.  Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section.  8 U.S.C. § 1226(c).

humanitarian reasons or significant public benefit." *Id.* (quoting *Jennings*, 583 U.S. at 288). Section 1182(d)(5)(A) does not grant admission to the noncitizen, rather it permits the noncitizen to enter the United States "for as long as the humanitarian or public benefit persists." *Id.* (citations omitted). Thus, a parolee's "physical presence within the United States cannot be said to be unlawful or illegal because it is authorized by the Attorney General, and parole has long been understood to constitute lawful status."[5] *Id.* (quoting *United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019)).

**B. Reyes Guzman is not an arriving alien.**

With this statutory background in mind, the *Rodriguez-Acurio* court carefully analyzed Section 1225(b)(1) and (b)(2) and held that the petitioner's detention did not fall under either subsection based on the statutory text. 811 F. Supp. 3d at 295–311. The court held that "neither the Arriving Aliens Provision nor the Designation Provision of Section 1225(b)(1) authorizes expedited removal and the detention of noncitizens who, like Rodriguez-Acurio, were paroled into the United States under Section 1182(d)(5)(A)." *Id.* at 297. This court joins the Eastern District of New York, as well as other district courts, in reaching the same conclusion. *Id.* (collecting cases); *see also Pico Bano v. Mullin*, No. 4:26-cv-1449,

---

[5] The court notes that parole under Section 1182(d)(5)(A) is distinct from "conditional parole" under Section 1226(a)(2)(B). *Rodriguez-Acurio*, 811 F. Supp. 3d at 295. However, it is not necessary for the court to address this distinction further here.

2026 WL 1726260, at *4 (M.D. Pa. June 15, 2026) (finding that because petitioner was previously paroled, he was not subject to the mandatory detention language contained in Section 1225).

Following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), to conduct a statutory interpretation analysis of the arriving alien provision, the court finds that an "arriving alien" is "one who is in the process of reaching the United States." *Rodriguez-Acurio*, 811 F. Supp. 3d at 305–07. "Applying the plain meaning of the term 'arriving' in Section 1225(b)(1)(A)(i), [Reyes Guzman] can no longer be classified as a noncitizen 'who is arriving in the United States'" even though he was initially designated as an arriving alien in July 2019. *Id.* at 307. When Reyes Guzman was arrested on September 4, 2025, over six years after he was paroled into the United States, Reyes Guzman was not in the process of "arriving" in the United States. *See id.* at 307–08. Therefore, Reyes Guzman is not an arriving alien under Section 1225(b)(1)(A)(i), nor is his detention governed by Section 1225(b)(1).

## C. Reyes Guzman is not an applicant for admission.

Although Respondents do not clearly raise this issue,[6] the court finds that Reyes Guzman also cannot be classified as an "applicant for admission" under

---

[6] In conducting this analysis, the court relies on the arguments that Respondents routinely make in addressing the applicant for admission issue.

Section 1225(b)(2). The Second, Sixth, Tenth, and Eleventh Circuit Courts of Appeals and federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Reyes Guzman, a noncitizen who previously entered and had been living in the United States prior to his detention.[7] *See, e.g.*, *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (holding that petitioner's "detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) (same); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026) (same); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F. 4th 1258 (11th Cir. 2026) (same); *Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section 1225(b) was inapplicable to petitioner); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*,

---

[7] The court acknowledges that there are some district courts, as well as the Fifth and Eighth Circuit Courts of Appeals, who have agreed with Respondent's usual interpretation of Section 1225. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). However, none of these decisions are binding on this court.

3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same). "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225." *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

As this court has held many times before, the court is persuaded by and agrees with the Second, Sixth, Tenth, and Eleventh Circuit Courts of Appeals and the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A). Reyes Guzman's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States." *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025). Thus, this section simply does not apply to someone like Reyes Guzman, who has been residing in the United States for approximately six years since reentering the United States in July 2019. *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the

11

plain meaning of the statutory text. *Bethancourt Soto*, 807 F. Supp. at 406 (finding

that respondents' interpretation "violates the rule against surplusage and negates

the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5 (citing

*Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL

3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same). If Section 1225(b)(2)(A) applied

to every "applicant for admission," the phrase "seeking admission" would become

unnecessary and surplusage.[8] *Bethancourt Soto*, 807 F. Supp. 3d at 406–07

(citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res.,*

*Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute

should have meaning" and "no clause, sentence, or word shall be superfluous,

void, or insignificant"). Further, "seeking admission" connotes "some affirmative,

present-tense action" such that it "requires an act currently underway not a static

condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that

---

[8] *Bethancourt Soto*, 807 F. Supp. 3d at 407, provides a helpful example of why Respondents' interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599 U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[9]

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Reyes Guzman is not currently "seeking admission" to the United States. That was his status in July 2019. Therefore, Section 1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to the United States.

### D. Section 1226(a) is not applicable to Reyes Guzman

Because the court finds that Section 1225(b) does not govern Reyes Guzman's detention, the court turns to Respondents' alternative argument that

---

[9] Again, the examples provided by the court in *Bethancourt Soto*, 807 F. Supp. 3d at 406–07, are illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point— one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

Reyes Guzman is detained pursuant to Section 1226(a).  As previously detailed, Section 1226(a) applies when a noncitizen is arrested and detained "*[o]n a warrant issued by the Attorney General.*"  8 U.S.C. § 1226(a).  In this case, neither in the immigration records provided to the court nor in the parties' briefing, is there any evidence that a warrant was issued to arrest Reyes Guzman on September 4, 2025.  Thus, the court finds that Reyes Guzman is not detained pursuant to Section 1226(a).

### E.    Due Process

Addressing Reyes Guzman's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).  Thus, the court must determine what process is due to Reyes Guzman, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function

14

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The first factor weighs heavily in Reyes Guzman's favor because the "official action" has deprived him of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government."). The second factor similarly swings in Reyes Guzman's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Bethancourt Soto*, 807 F. Supp. 3d at 409 (emphasis in original). As to the third factor, the court recognizes Respondents' interest in detaining noncitizens to ensure "the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Still, this factor weighs in favor of Reyes Guzman because Respondents do not contend that he poses a danger to the community or that he is a flight risk. Accordingly, the *Mathews* factors weigh in Reyes Guzman's favor and the court finds that his mandatory detention without a bond hearing under Section 1225(b)(2)(A) violates his procedural due process rights. *See Bethencourt Soto*, 2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted);

15

*Patel*, 2025 WL 3516865 at *6 (holding same).  Thus, the court will grant Reyes

Guzman's petition and release him as he was before ICE arrested him on

September 4, 2025.

### CONCLUSION

For these reasons, the court will grant Reyes Guzman's petition for writ of

habeas corpus, deny as moot his motion to expedite, and order Reyes Guzman's

immediate release.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 28, 2026

16